UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA NWOBI,

                          Plaintiff,

          -against-

RYDER TRUCK RENTAL, INC,

                          Defendant.

25-CV-4894 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Barbara Nwobi, proceeding pro se, brings this action against her former employer, Ryder Truck Rental, Inc. She alleges that Ryder discriminated against her, then wrongfully terminated her, after a shoulder surgery and a series of other medical ailments limited her ability to work. Her Complaint, construed liberally, suggests claims under the Americans with Disabilities Act, New York Labor Law, New York State Human Rights Law, and National Labor Relations Act. Although Plaintiff originally brought this action in state court, Defendant removed it to this District. Plaintiff now moves to remand the case back to state court and seeks leave to amend her Complaint. Defendant moves to dismiss Plaintiff's case entirely.

Because the Court possesses original jurisdiction over this case, Plaintiff's motion to remand is DENIED. Defendant's motion to dismiss, meanwhile, is GRANTED in part and DENIED in part. Plaintiff's claims under the Americans with Disabilities Act are untimely, and she fails to state claims under the New York State Human Rights Law and National Labor Relations Act. She does, however, plausibly state a claim under New York Labor Law. Because the Court grants Plaintiff leave to replead her claims, her motions to amend are DENIED as moot.

**FACTUAL BACKGROUND**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also Lapa v. JP Morgan Chase Bank, N.A.*, No. 21-CV-4737 (NSR), 2023 WL 4706827, at *2 (S.D.N.Y. July 22, 2023) (explaining that a court may "consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.").

Plaintiff's initial filing consisted of a standardized summons and complaint from the Orange County Supreme Court, to which she appended an eight-page letter and eighty-six pages of exhibits. ECF No. 1-1 ("Compl."). Because Plaintiff expressly wrote "[p]lease [s]ee attached" in her standardized complaint, then attached the letter, which in turn referenced the attached exhibits, the Court will consider all of these documents in its analysis. Compl. at 2. The Court will refer to these filings collectively as the Complaint.[1] The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff Barbara Nwobi ("Nwobi"), who is proceeding pro se, worked for Defendant Ryder Truck Rental, Inc. ("Ryder") as a diesel technician. Compl. at 8. In that role, she "perform[ed] minor to average routine maintenance and repair services on different types of

---

[1] The page numbers cited in this Opinion reflect those in ECF No. 1-1.

vehicles," and was "[f]requent[ly]" required to lift, pull, and push objects weighing between ten and twenty-five pounds. *Id.* at 46, 49.

In March 2023, Nwobi underwent surgery due to a "non-work-related shoulder injury." *Id.* at 7. The surgery was scheduled for March 17, and her doctor recommended that she remain away from work until March 26. *Id.* at 35. On March 30, 2023, Nwobi's doctor wrote a note recommending that she continue to be excused from work until he re-evaluated her in one month's time. *Id.* at 39. For the next three months, Nwobi's doctor continued to make that same recommendation—that she refrain from working and that he would re-evaluate her one month later. *Id.* at 36–39. His last note to that effect came on June 6, 2023. *Id.* at 36.

A little more than one month after that, on July 17, 2023, Nwobi received another note from a different doctor, which explained that she would "need to remain out of work until further notice" because of an ankle injury. *Id.* at 30. Three days later, on July 20, Nwobi completed Ryder's Request for Medical Information for Reasonable Accommodation form. *Id.* at 32–34. Nwobi represented on the form that she could not lift, pull, or push any object greater than ten pounds. *Id.* at 33. She wrote that she expected her accommodation request to be temporary, and that she estimated her "impairment" to last for four weeks. *Id.*

Some five weeks later, on August 29, 2023, Ryder sent Nwobi two letters. The first was from Jamarco Campbell ("Campbell"), Nwobi's manager. Compl. at 53; ECF No. 14 ("Opp.") at 3 (identifying Jamarco Campbell as her "boss"). "It is our understanding that as of the date of this letter, you remain unable to perform the essential functions of your job with or without reasonable accommodation," the letter said. Compl. at 53. "Therefore, regrettably, effective 08/29/23 your employment with Ryder is being administratively terminated." *Id.*; *see also id.* at 11.

The second letter was from Termall Ritter ("Ritter"), a Workplace Accommodations Specialist in Ryder's Human Resources Department. *Id.* at 64. "In accordance with Ryder Policy and the Americans with Disability [sic] Act (ADA), we attempted to engage you in the ADA interactive process to determine if a reasonable accommodation could be approved to allow you to return to work while managing your medical conditions," Ritter wrote. *Id.* "The Accommodation case was opened on February 24, 2023, but as of the last document we received from your provider, you have not been released in a capacity to perform the essential functions of your job," he continued. *Id.* Ryder had also "emailed [Nwobi] the instructions on how to search for alternate positions within the company and asked that [Nwobi] please let [Ritter] know what positions [she] appl[ied] for," but "no alternate job information was received by the August 26, 2023 cutoff date." *Id.* Therefore, Ritter concluded, Nwobi's "case will be closed." *Id.*

That same day, Nwobi applied for another job at Ryder, as a Rental Management Trainee (RMT), which "focused on vehicle sales, lead development, marketing, and related processes" and required little to no manual labor. Compl. at 19. The Complaint indicates that Nwobi had also applied to a "Fleet Management Training position" on May 20, 2023. *Id.* at 8. And she appears to have emailed Ritter her resume on June 21, 2023. *Id.* at 75.

On September 7, 2023, Nwobi's shoulder doctor wrote her another note. *Id.* at 42. This note explained that Nwobi's "shoulder injury has been improving since [the] procedure" but that she was "experiencing difficulties due to carpal tunnel syndrome" and should only "be assigned to light duty at work" with "[n]o pushing, pulling or lifting anything over 10 lbs." *Id.* Nwobi received and sent Ryder this doctor's note—even after being terminated on August 29—because she had not actually received notice of her termination. *See* Compl. at 8 ("Ryder had and has evidence of my carpal tunnel syndrome, as they received a doctor's note indicating my diagnosis

4

on September 7, 2023."); *infra* at 5–6 (discussing contemporaneous emails documenting that Nwobi only "found out" that she had been terminated on September 26, 2023). Indeed, Nwobi's "termination was kept secret from [her]"; she would only discover that she had been fired "when [she] saw it in [her] Workday profile and was 'shut out of internal job searches' on September 26, 2023." Opp. at 3.

On September 7, Nwobi also exchanged a series of emails with Ritter, the Workplace Accommodations Specialist. Compl. at 58. She was inquiring about the RMT role. *Id.* Ritter responded that the RMT job was an "alternate position" for which Nwobi was being considered, but that she had not yet been hired or transferred into a new role. *Id.* He also cautioned that because Nwobi had "exhausted all leave entitlement and ha[d] been without benefits since March 7, 2023," the company could "process a separation if needed for business needs." *Id.* However, he explained, "a separation has not been processed yet, but could happen[]." *Id.* And, he assured her, "[i]f it does, you are still able to look for positions within the company and apply." *Id.* Nwobi interviewed for the RMT position on September 13, 2023. Opp. at 3.

Two weeks later, on September 25 and 26, Nwobi and Ritter again exchanged emails about the RMT role. Compl. at 67–70. "The recruiter should be reaching out to you soon regarding your application status," Ritter wrote. *Id.* at 67. He reiterated that because Nwobi had been "out on a leave without benefits since March 7, 2023, and up to this point [had] not been released back to work," her "management could process a separation." *Id.* at 67–68. But, he offered, "[i]f you are able to find another position within the company, it can be reversed." *Id.*

Nwobi sought some clarification: "[H]ow could I be terminated during this process?" she asked. *Id.* at 68. "If I was in the process of interviewing and did interview for a position while within the accommodations phase[,] how could I be terminated?" she wondered. *Id.* at 69. Less

than one hour later, she got her answer: "I just found out that I was terminated as of August 29, 2023," she wrote. *Id.* "I have been shut out of internal job searches too," she said. *Id.* at 70. Later that evening, she wrote to Ritter to express that she felt "like the rug ha[d] been pulled right from underneath [her]." *Id.*

Nwobi did not get the job. *Id.* at 19. She received her last paycheck from Ryder on September 20, 2023. *Id.* at 11. And for at least the next month, she exchanged emails with another member of Ryder's HR department, Jaime Hummell ("Hummell"). *See id.* at 90–100. In those emails, Nwobi expressed her "hurt[]," that she did "not feel heard and supported," and, as Hummell confirmed, that she felt as though her termination was "wrongful." *Id.* at 93–95. Nwobi also requested to have a union representative present when Hummell suggested that they discuss Nwobi's termination. *Id.* at 96. Hummell responded that it would "not be likely that [he would] be able to have a union representative on the video chat due to [Nwobi] no longer being part of the union," but offered to "inquire . . . to see if it is possible." *Id.* at 97. Ultimately, the conversation never happened: Hummell explained to Nwobi that a conversation was no longer necessary because Hummell had "reviewed all the circumstances regarding [her] separation with Ryder, and there is no evidence that [her] separation was wrongful." *Id.* at 99. "If you feel differently or would like to discuss further," Hummell wrote, "please feel free to reach out to me." *Id.*

Nwobi also did not receive any help from her union, the International Association of Machinists and Aerospace Workers ("IAM"). *See* Compl. at 18, 72. She was in contact with the union for months following her termination, until at least February 13, 2024, when—citing Ryder's August 29, 2023 letters, the union's belief that Nwobi "did not attempt to make job selections until September 2023," and Nwobi's failure to contact her local representative until

October 2023—IAM conveyed that "there is nothing further the Union can do on your behalf, and we consider the matter closed." *Id.* at 72. Nwobi takes issue with IAM's actions before and after her termination, *see, e.g.*, *id.* at 7, 12, 26, and with Ryder's attempt to "steer[]" her towards non-union positions during her job search, *id.* at 23.

Ultimately, Nwobi filed a Charge with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* at 14. She received a notice of her right to sue on June 26, 2024. *Id.* The Notice made clear that should Nwobi "choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, [her] *lawsuit must be filed WITHIN 90 DAYS of [her] receipt of this notice.*" *Id.* (emphasis in original). The Notice reiterated that her "right to sue based on this charge will be lost if [she did] not file a lawsuit in court within 90 days." *Id.* The Notice also provided the caveat that the "[t]ime limit for filing a lawsuit based on a claim under state law may be different." Compl. at 14.

Nwobi filed the instant case on February 7, 2025. *Id.* at 4. In her Complaint, she alleges "[d]iscrimination, [w]rongful [t]ermination, and [r]etaliation . . . by the Defendant," *id.* at 2, and seeks "accountability for their actions and a commitment to fair treatment for employees with disabilities," *id.* at 11. "The combination of my shoulder injury and carpal tunnel syndrome," Nwobi argues, alongside "Ryder's failure to provide necessary accommodations," led her to "belie[ve] that [her] termination was wrongful." *Id.* Although Nwobi does not specifically enumerate her claims, her Complaint mentions both the Americans with Disabilities Act ("ADA"), *see id.* at 10 (arguing that Ryder's "failure to accommodate my needs during my employment is a violation of the ADA and suggests discriminatory practices in handling my case"), and New York Labor Law § 191, *see id.* at 11–12 (contending that the "delay in payment" between her August 29 termination and final September 20 paycheck "raises concerns about

Ryder's compliance with New York Labor Law, specifically NY Labor Law § 191, which mandates that final wages must be paid to employees in a timely manner upon termination.").

At the time of filing, Nwobi was a patient at a mental health clinic where she received treatment for severe depression and anxiety on a bi-weekly basis. *Id.* at 6.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Orange County Supreme Court on February 7, 2025. *Id.* at 2, 4. Defendant appears to have been served a summons and the short form complaint—without Plaintiff's attached letter or exhibits—on February 11, 2025. *See* ECF No. 1-5 at 1, 5–8. Defendant was then served with the full Complaint (the summons, the short form complaint, and the EEOC response and exhibits) on May 21, 2025. ECF No. 1-4. On June 10, 2025, Defendant removed the case to this District pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, asserting that the Court possesses both federal question and diversity jurisdiction. ECF No. 1. The next day, Plaintiff moved to remand. ECF No. 3 ("Pl. Mot."). Plaintiff then filed three addenda and a letter, clarifying and elaborating on her remand arguments. ECF Nos. 4, 6, 7, 13. On June 25, 2025, Defendant filed a motion to dismiss arguing that Plaintiff's suit is untimely. ECF No. 11.

Five months later, Plaintiff filed two motions seeking leave to amend her complaint. ECF Nos. 19, 20. Although distinct, these motions were filed on the same day. *Id.* Defendant opposed the motions. ECF No. 24. Then, days later, Plaintiff submitted an additional declaration, memorandum of law, and table of exhibits opposing Defendant's motion to dismiss. ECF Nos. 25–27. Finally, on February 27, 2026, Plaintiff filed another motion seeking leave to amend her complaint—this time seeking to "narrow and supersede" her prior requests to amend. ECF No. 29. Defendant opposed this motion, as well. ECF No. 31.

## LEGAL STANDARDS

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). This is especially true in pro se cases, where courts must construe a complaint "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

The Court's analysis proceeds in eight parts. First, because Defendant appears to have been served twice, and because the timing of such service implicates Defendant's subsequent removal of this case to federal court, the Court initially considers whether service and removal were proper. It concludes that they were. Second, the Court assesses the additional allegations Plaintiff puts forth in her Opposition and in her recent filings. It finds that its analysis can include those allegations raised in Plaintiff's Opposition, but not those raised in her recent papers. Third,

9

the Court analyzes Plaintiff's motion to remand and concludes that, because it has original

jurisdiction over this action, it must evaluate both Plaintiff's federal and state law claims. Next,

the Court evaluates Plaintiff's claims under the ADA, New York Labor Law, New York Human

Rights Law, and for breach of duty of fair representation. The Court then grants Plaintiff leave to

replead her claims.

## I.    Service and Removal Were Proper

To begin, the Court determines whether service and removal were proper. As explained

above, Defendant appears to have been served twice: first, on February 11, 2025, when

Defendant was served with a summons and a short form complaint without Plaintiff's attached

letter or exhibits, *see* ECF No. 1-5 at 5–8; and second, when Defendant was served with the

summons and full Complaint on May 21, 2025. ECF No. 1-4. On June 10, 2025, Defendant

removed the case to this District. ECF No. 1.

Under New York's Civil Practice Law and Rules ("CPLR"), "personal service on a

corporation shall be made 'delivering the summons . . . to an officer, director, managing or

general agent, or cashier or assistant cashier or to any other agent authorized by appointment or

by law to receive service.'" *Saregama India, Ltd. v. Mosley*, Nos. 12-MC-45-P1, 11-MC-84-P1

(LAK), 2012 WL 955520, at *2 (S.D.N.Y. Mar. 20, 2012) (quoting N.Y. C.P.L.R. § 311(a)(1)).

For service to be effective, a plaintiff must also serve the summons and complaint "within one

hundred twenty days after the commencement of the action or proceeding." N.Y. C.P.L.R. § 306-

b. Removal, meanwhile, is governed by federal law, which requires that a defendant file a notice

of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a

copy of the initial pleading setting forth the claim for relief upon which such action or

proceeding is based." 28 U.S.C. § 1446(b).

Here, Defendant was properly served pursuant to CPLR § 311(a)(1) on both February 11, 2025, and May 21, 2025. *See* ECF Nos. 1-4, 1-5. Both dates are within 120 days of the initiation of this action, making service timely. N.Y. C.P.L.R. § 306-b. Additionally, it appears as though Defendant was served a second time because Plaintiff sought to serve Defendant with the complete "pleading setting forth the claim for relief" upon which this action is based, not because she wanted to amend or correct her initial Complaint. 28 U.S.C. § 1446(b). In other words, the Complaint that Plaintiff filed to begin this lawsuit on February 7, 2025, was only fully dispatched to Defendant on May 21, 2025, the second time Defendant was served.

With service of a pleading setting out Plaintiff's claim for relief on May 21, 2025, removal was also proper. Defendant removed this case to federal court on June 10, 2025, less than thirty days after receiving complete service. ECF No. 1; 28 U.S.C. § 1446(b). Therefore, removal was proper.

## II.    The Court Will Consider Additional Allegations in Plaintiff's Opposition, but not in Subsequent Filings

Next, as another preliminary matter, the Court addresses Plaintiff's attempt to supplement her operative Complaint by bringing forth additional facts and claims in her Opposition to Defendant's Motion to Dismiss, Opp. at 1–2, and in subsequent filings, ECF Nos. 19, 20, 25, 26.

A district court's adjudication of a 12(b)(6) motion generally shall "not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016) (cleaned up); *accord Richards v. Warner Music Grp*., No. 22-CV-6200 (DEH), 2024 WL 4307994, at *3 (S.D.N.Y. Sept. 26, 2024) (refusing to consider declarations submitted by the plaintiffs in connection with their opposition); *Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021) ("[N]ew facts and allegations, first

raised in a [p]laintiff's opposition papers, may not be considered in deciding a motion to dismiss." (internal citation and quotation marks omitted)).

However, the "Court is obliged to construe pro se pleadings liberally and interpret them to raise the strongest arguments that they suggest." *Davis v. Horton*, No. 23-CV-885 (JPC) (VF), 2025 WL 539658, at *2 (S.D.N.Y. Jan. 27, 2025), *report and recommendation adopted*, 2025 WL 522486 (S.D.N.Y. Feb. 18, 2025) (internal citations and quotation marks omitted); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Because Plaintiff is proceeding pro se, "it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to [her] opposition papers." *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 524 (S.D.N.Y. 2016) (internal citations and quotation marks omitted); *see, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Barkai v. Mendez*, 629 F. Supp. 3d 166, 186 (S.D.N.Y. 2022) (same). Although the "special solicitude" granted in pro se cases has its limits, *Triestman*, 470 F.3d at 475, "this Court is not restricted to analyzing just the factual allegations within the four corners of the Complaint," *Bosman v. McDonough*, No. 24-CV-5124 (JMW), 2025 WL 2371082, at *5 (E.D.N.Y. Aug. 14, 2025).

Here, Plaintiff argues in her Opposition that her Complaint included claims under New York Human Rights Law ("NYSHRL") and that her union breached its duty of fair representation. *See* Opp. at 2. She also alleges that Ritter, from Ryder's Human Resources Department, "actively identified and presented the Rental Management Trainee (RMT) position as the only viable option for [her]." *Id.* at 3. In her more recent filings, Plaintiff levies further allegations against her union, contends that Ryder and the union were engaged in a conspiracy

12

against her, and asserts claims under a number of other federal statutes. *See, e.g.*, ECF No. 19 at 2 (alleging an ERISA violation), ECF No. 20 at 2 (alleging age discrimination under the Age Discrimination in Employment Act and sex/race discrimination under Title VII), ECF No. 25 at 2 (alleging a conspiracy between Ryder and IAM), ECF No. 26 (elaborating on her ADA claim).

Construing her submissions to raise the strongest arguments they suggest, the Court recognizes that, consistent with the Complaint Plaintiff filed, she asserts claims for disability discrimination, wrongful termination, and retaliation under the NYSHRL and for breach of duty of fair representation under the National Labor Relations Act ("NLRA"). Opp. at 2; *see, e.g.*, *Phillips v. United Food & Com. Workers Union Loc. 2013*, No. 23-CV-8283 (KMK), 2025 WL 2659087 (S.D.N.Y. Sept. 17, 2025) (recognizing the same).

The Court does not grant the same solicitude to the facts and arguments Plaintiff raises in her two motions for leave to amend or in her subsequent declaration and memorandum of law. *See* ECF Nos. 19, 20, 25, 26. The allegations Plaintiff puts forward in her latest motions, declaration, and memorandum of law extend well beyond those she first laid out in her Complaint. *See* ECF Nos. 25, 26. Indeed, Plaintiff seeks to formally add her union as a party to this action and contemplates a wide-ranging conspiracy between Ryder and IAM. *See* ECF Nos. 19, 25. The Court will therefore analyze Plaintiff's motion to remand, as well as her claims under the ADA, New York Labor Law, NYSHRL, and NLRA. It declines to evaluate Plaintiff's wider claims unless and until they are pled as part of an Amended Complaint.

### III.    Plaintiff's Motion to Remand Is Denied

With that framework established, the Court considers Plaintiff's motion to remand. *See* Pl. Mot. Plaintiff seeks to remand this case back to Orange County Supreme Court. *Id.* She contends that the Court lacks jurisdiction over the case because "the claims primarily involve

13

state law issues that are best adjudicated in state court." *Id.* at 1. Defendant counters that Plaintiff's motion should be denied because the Court possesses both federal question and diversity jurisdiction. ECF No. 10 ("Def. Opp.").

"The governing provision of the federal removal statute authorizes a defendant to remove 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998) (citing 28 U.S.C. § 1441(a)). Removal statutes are construed narrowly "out of respect for the limited jurisdiction of the federal courts and the rights of the states." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). But once it has been determined that a federal court does have jurisdiction, the federal court has "a 'virtually unflagging obligation' to exercise [its] jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Because the Court finds that it has both federal question and diversity jurisdiction over this action, and exercises that jurisdiction, Plaintiff's motion to remand is denied.

### A.  The Court Has Federal Question Jurisdiction

Under 28 U.S.C. § 1331, district courts "have original jurisdiction of civil actions arising under the Constitution, laws, or treaties of the United States." In her Complaint, Plaintiff makes clear that she is asserting claims under a federal statute: the Americans with Disabilities Act ("ADA"). *See* Compl. at 10, 22. Indeed, in her motion to remand, Plaintiff emphasizes that this case "arises . . . under the Americans with Disabilities Act (ADA) and related state law claims." Pl. Mot. at 1. Although Defendant incorrectly asserts that Plaintiff's claims "arise *exclusively* under the ADA"—her invocation of "NY Labor Law § 191" does more than merely

14

"strengthen[]" and "underscore[]" her ADA claims, as discussed below—Plaintiff undeniably asserts at least one claim under the ADA. Def. Opp. at 1, 2 (emphasis added); *see* Compl. at 10 (claiming Defendant's conduct was "a violation of the ADA"). Because the ADA is a federal statute, this Court unquestionably possesses federal question jurisdiction. 28 U.S.C. § 1331.

### B. The Court Has Diversity Jurisdiction

Under 28 U.S.C. § 1332, district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." A district court possesses diversity jurisdiction "only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr.*, 524 U.S. 381, 388 (1998) (citing *Carden v. Arkoma Associates,* 494 U.S. 185, 187 (1990)). A corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (emphasis removed) (quoting 28 U.S.C. § 1332(c)(1)). An individual's citizenship, meanwhile, depends on her domicile: "the place where a person has her true fixed home and principal establishment, and to which, whenever she is absent, she has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (cleaned up). A person may only have one domicile at a time. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). And while "[r]esidence, alone, is not the equivalent of domicile . . . it is prima facie evidence of domicile." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 446–47 (S.D.N.Y. 2014) (internal citation omitted).

Defendant Ryder is a corporation incorporated in Florida with its principal place of business in Florida. ECF No. 1 ¶ 14; ECF No. 1-3 ¶ 4. Plaintiff resides in New York and, by all accounts, is domiciled there. *See* Compl. at 1. She presents no facts and makes no arguments to

the contrary. *See* ECF Nos. 3, 4, 6, 7, 13. Even if she did, she would bear "the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality," and would have to prove those elements "by clear and convincing evidence." *Palazzo*, 232 F.3d at 42. She makes no such argument and offers no such evidence—accordingly, Plaintiff is a citizen of New York. Because Defendant is a citizen of Florida and Plaintiff is a citizen of New York, complete diversity exists. 28 U.S.C. § 1332.

Plaintiff does not dispute that complete diversity exists; instead, she argues that her claims do not fulfill the amount-in-controversy requirement. "I wish to clarify that I have not formally requested a specific amount of damages in this case," Plaintiff writes. ECF No. 4; *see also* ECF No. 6 ("The figure of $75,000 mentioned in the court docket does not reflect my claim . . . ."). Defendant argues that the amount in controversy plainly exceeds $75,000. ECF No. 1 at 3; Def. Opp. at 3–4.

"Defendants have the burden of demonstrating that removal of a case to federal court is proper." *Ma v. United Rentals (N. Am.), Inc.*, 678 F. Supp. 3d 412, 414 (S.D.N.Y. 2023) (citing *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) and *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). As such, "where, as here, the complaint does not 'specify the particular amount of damages sought,'" *Robinson v. Berkshire Life Ins. Co. of Am.*, No. 18-CV-7689 (JPO), 2019 WL 1614831, at *2 (S.D.N.Y. Apr. 16, 2019) (quoting *Mehlenbacher*, 216 F.3d at 296), the defendant's notice of removal must "allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount," *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994). "This burden has been

16

stated as showing a 'reasonable probability that the jurisdictional amount has been reached.'" *Ma*, 678 F. Supp. 3d at 414 (quoting *Robinson*, 2019 WL 1614831, at *2).

Defendant makes such a showing. "Jurisdictional facts, 'such as the amount in controversy,' are evaluated 'on the basis of the pleadings, viewed at the time when defendant files the notice of removal.'" *Howard v. Anthem, Inc.*, 638 F. Supp. 3d 133, 139 (D. Conn. 2022) (quoting *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014)); *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006) ("Another guiding principle is that the propriety of removal is to be determined by the pleadings at the time of removal.") (collecting cases). "Accordingly, courts in this circuit have held that a potential award for back pay should be calculated from the date of the termination through the date the defendant files the notice of removal." *Howard*, 638 F. Supp. 3d at 139 (citing *Hager v. Steele*, No. 20-CV-4482 (LGS), 2020 WL 4345735, at *2 (S.D.N.Y. July 29, 2020); *Jones v. Charter Comm'ns LLC*, No. 18-CV-5953 (NG) (LB), 2019 WL 1760841, at *3 (E.D.N.Y. Apr. 22, 2019)). Here, Defendant avers that "Plaintiff was earning $30.63 per hour plus an additional $1.00 per hour as a shift premium" at the time she was fired in August 2023. ECF No. 1 ¶ 7; ECF No. 1-3 ¶ 5. "Assuming work on a full-time basis," Defendant calculates that Plaintiff's "back pay damages to date [at the time of removal] would be approximately $117,663.60." ECF No. 1 ¶ 7. As such, Plaintiff's alleged back pay damages alone—not including other available categories of damages—establishes the jurisdictional limit.

Defendant's representation, made in good faith, subject to the strictures of the Federal and Local Rules, and with room to account for any calculation errors, demonstrates with "reasonable probability that the jurisdictional amount has been reached." *Robinson*, 2019 WL 1614831, at *2 (internal quotation marks omitted). Therefore, the Court also possesses diversity

17

jurisdiction.[2] Because the Court has original jurisdiction over this action, Plaintiff's motion to remand is denied. 28 U.S.C. § 1441(a).

### IV.    Plaintiff's ADA Claims Are Untimely

Next, the Court addresses Defendant's motion to dismiss. ECF No. 11. Defendant argues that Plaintiff's ADA claims are untimely—namely, that she failed to file the instant lawsuit within ninety days of receiving her right-to-sue letter from the EEOC. *Id.* at 4–5. "In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citing 42 U.S.C. § 2000e–5(f)(1) and 42 U.S.C. § 12117(a)). Plaintiff's right-to-sue letter communicated as much: should Plaintiff "choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, [her] lawsuit must be filed WITHIN 90 DAYS of [her] receipt of this notice," her Notice read in bold type. Compl. at 14. In fact, her Notice warned her twice. It also made clear that Plaintiff's "right to sue based on this charge will be lost if [she does] not file a lawsuit in court within 90 days." *Id.*

Plaintiff received her right-to-sue letter on June 26, 2024. *Id.* She filed this lawsuit 226 days later, on February 7, 2025. *Id.* at 4. Accordingly, Plaintiff's ADA claims are untimely.

Plaintiff does not dispute this fact. *See* Opp. at 2–3. Instead, she appeals for an "extension" of what she acknowledges is "the 90-day right to sue period related to the EEOC process." Compl. at 12. Otherwise known as "equitable tolling," such extensions are "only

---

[2] Additionally, because the Court possess diversity jurisdiction over Plaintiff's claims, it need not examine whether it should exercise supplemental jurisdiction over Plaintiff's state law claim. The Court possesses sufficient authority to evaluate both Plaintiff's ADA (federal) claims and her New York Labor Law (state) claim under its diversity jurisdiction, and does so below.

appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Chui v. Publicis Groupe S.A.*, No. 24-CV-6767 (AT), 2025 WL 2711197, at *3 (S.D.N.Y. Sept. 23, 2025) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up)).

"More specifically, 'when determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Lall v. New York Hous. Auth.*, No. 24-CV-5508 (JMF), 2024 WL 4954011, at *1 (S.D.N.Y. Dec. 2, 2024), *aff'd sub nom. Lall v. New York City Hous. Auth.*, No. 24-3237, 2025 WL 2962954 (2d Cir. Oct. 21, 2025) (quoting *Zerilli-Edelglass*, 333 F.3d at 80–81). The Second Circuit has explained that "equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period"; "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant"; "or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Shin v. NBC Universal Media, LLC*, No. 23-CV-10996 (LJL), 2025 WL 438297, at *8 (S.D.N.Y. Feb. 7, 2025) (quoting *Zerilli-Edelglass*, 333 F.3d at 80).

Plaintiff contends that the second and third of these options apply, arguing that "the circumstances surrounding [her] mental health crisis, the hostile work environment, and the misleading actions of Ryder, the union, and the EEOC" warrant an extension on her ninety-day deadline. Compl. at 12; *see also* Opp. at 3–6. First, for purposes of this motion, the Court accepts that Plaintiff has legitimate mental health challenges. Plaintiff describes and provides evidence for the "severe, documented medical condition" that "directly impacted [her] capacity to function

19

and navigate the legal process." Opp. at 5. She cites, in particular, an incident from September 26, 2022, and "the ongoing discriminatory tactics" at issue in this lawsuit as contributing and compounding factors that have "rendered [her] unable to fully comprehend and respond" to the legal process. *Id.*

Nevertheless, the case law is clear. "Although pro se plaintiffs are entitled to leniency in other areas of litigation, . . . [t]he 90-day deadline is strictly enforced against represented and pro se plaintiffs alike. If a pro se plaintiff misses her deadline by a few days, or even one day, her action must be dismissed as untimely." *Lall*, 2024 WL 4954011, at *1 (quoting *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17-CV-1022 (PAE) (AJP), 2017 WL 5125542, at *3 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 Fed. App'x 584 (2d Cir. 2018) (summary order)). Plaintiff's evidence does nothing to shake that firm foundation. In describing her mental health obstacles, Plaintiff points only to events that took place *before* she was issued her right-to-sue letter. *See* Opp. at 5. She offers that she remains in treatment, but provides no concrete examples describing how her mental health condition "prevented her from proceeding in a timely fashion." *Zerilli-Edelglass*, 333 F.3d at 80; *cf. Wilson v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 23-CV-8911 (CS), 2025 WL 1295655, at *3 (S.D.N.Y. May 5, 2025) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) ("[D]istrict courts 'cannot invent factual allegations' that the plaintiff has not pleaded."). She does not dispute that she missed her deadline by more than "a few days." *Lall*, 2024 WL 4954011, at *1.

Plaintiff's other arguments fare no better. The "hostile work environment, and the misleading actions of Ryder, the union, and the EEOC" are all events that also allegedly took place before Plaintiff received her right-to-sue letter. Compl. at 12. The EEOC letter clearly notified Plaintiff that she had 90 days to act. Compl. at 14. That she failed to do so because of

20

prior occurrences hardly "prove[s] that the circumstances [were] so extraordinary that the [equitable tolling] doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 81.

Finally, while Plaintiff can be said to have "acted with reasonable diligence" before she received her EEOC letter and since she filed this lawsuit, the same cannot be said for "the time period she seeks to have tolled"—the 226 days it took for her to file this lawsuit after receiving the EEOC letter. *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotation marks omitted). Unfortunately for Plaintiff, that is the exact timeframe for which her "reasonable diligence" is required. *Id.* Plaintiff provides no specific evidence explaining away her delay.

Therefore, for the reasons stated above, Plaintiff's request for equitable tolling is denied and her ADA claims are dismissed with prejudice as untimely.

## V.    Plaintiff Has Plausibly Alleged a Violation of New York Labor Law

Next, the Court examines Plaintiff's New York Labor Law claim. Plaintiff makes one passing reference to New York Labor Law in her Complaint, alleging that the "delay in payment" between her August 29 termination and her final September 20 paycheck "raises concerns about Ryder's compliance with New York Labor Law, specifically NY Labor Law § 191, which mandates that final wages must be paid to employees in a timely manner upon termination." Compl. at 11–12. "The timing of the delayed payment," Plaintiff explains, "in conjunction with my termination while seeking accommodations, may serve as further evidence of retaliatory behavior and discriminatory practices by Ryder. This new evidence strengthens my claims and underscores the need for a thorough review of my case." *Id.* at 12. Defendant argues that Plaintiff "makes clear this is not an independent cause of action but simply 'evidence of retaliatory behavior and discriminatory practice' that 'strengthens' and 'underscores' her ADA claims." ECF No. 11 at 3 (quoting Compl. at 12).

21

The Court finds that Plaintiff's invocation of New York Labor Law is not simply evidence that "strengthens" and "underscores" her ADA claims, but a claim unto itself. Courts must construe pro se complaints liberally "to raise the strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474 (internal citation and quotation marks omitted) (emphasis in original). "This policy of liberally construing pro se submissions is driven by the understanding that 'implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); and citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (affirming that pro se litigants must be given "special solicitude")).

Plaintiff intimates that the "timing of [her] delayed payment" does more than merely support her existing ADA claims. She argues that it "may serve as *further* evidence of retaliatory behavior and discriminatory practices by Ryder," "strengthens her claims" in general, and "underscores" not just her ADA claims but "the need for a thorough review of my case" in its entirety. Compl. at 12 (emphasis added). Plaintiff then specifically calls out "NY Labor Law § 191," which she explains "mandates that final wages must be paid to employees in a timely manner upon termination." *Id.* These details, and their broad application to Plaintiff's generalized "case" "suggest" a separate claim under New York Labor Law § 191. *Triestman*, 470 F.3d at 474.

The Court therefore considers whether this claim is sufficiently plausible to survive Defendant's 12(b)(6) motion. New York Labor Law § 191, as Plaintiff properly explains in her Complaint, provides protections to ensure that workers are paid on time, according to specific schedules laid out in the statute. N.Y. Lab. Law § 191. "Manual workers," like Plaintiff, are generally required to be "paid weekly and not later than seven calendar days after the end of the

week in which the[ir] wages are earned." *Id.* § 191(1)(a)(i). This requirement is relaxed for employers that have, "in the three years preceding the application," employed an average of 1,000 or more people in New York State, or "for one year preceding the application" employed an average of 3,000 or more people outside of New York State. *Id.* § 191(1)(a)(ii). Those employers may pay manual workers "less frequently than weekly but not less frequently than semi-monthly if the employer furnishes satisfactory proof to the commissioner of its continuing ability to meet its payroll responsibilities." *Id.* The worker's labor union must also consent to an employer making use of this exception. *Id.*

The statute also prescribes specific requirements for paying workers after they have been fired. In those cases, the statute dictates that "the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." *Id.* § 191(3). A worker cannot be forced to accept "wages at periods other than as provided" by the law. *Id.* § 191(2).

The Second Circuit has consistently reaffirmed that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself*." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 306 (2d Cir. 2024) (emphasis in *Guthrie*) (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022)). But "[c]ourts in this Circuit have found that the 'delay of payment alleged here, in and of itself, constitutes a concrete harm that suffices for purposes of Article III.'" *Yuwono v. Jade Eatery & Lounge LLC*, No. 22-CV-4227 (PGG), 2025 WL 2793725, at *6 (S.D.N.Y. Sept. 30, 2025) (cleaned up) (quoting *Charles v. United States of Aritzia, Inc.*, 23-CV-9389 (MMG), 2024 WL 4167502, *2 (S.D.N.Y. Sept. 12, 2024)).

Accepting all of Plaintiff's factual allegations as true and drawing all reasonable inferences in her favor, Plaintiff therefore has standing to bring her claim under New York Labor Law § 191. She has also pled sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. Plaintiff alleges that she was paid on September 20, 2023, twenty-two days after she was terminated on August 29, 2023. Compl. at 11. Normally, Plaintiff would have been due her wages every week. N.Y. Lab. Law § 191(1)(a)(i). If Ryder qualified under the statute's exception, it could have paid Plaintiff "semi-monthly" at the latest. *Id.* § 191(1)(a)(ii). Plaintiff's union would have also had to consent to Ryder making use of that exception. And, even after Plaintiff was terminated, she would have been due her wages with this same frequency, regardless of any Ryder policy to the contrary. *Id.* §§ 191(2), (3). Under any of the scenarios contemplated by New York Labor Law § 191, then, Ryder's final payment was, at the very least, plausibly late under either payment schedule.

Defendant's motion to dismiss is accordingly denied as to Plaintiff's New York Labor Law claim.

## VI.    Plaintiff's NYSHRL Claims Do Not Survive Defendant's Motion to Dismiss

The Court now turns to Plaintiff's claims under the NYSHRL. Although Plaintiff does not plead these claims explicitly in her Complaint, her Opposition clearly delineates claims for disability discrimination, wrongful termination, and retaliation under the NYSHRL. "[M]y termination was based on Ryder's refusal to accommodate my carpal tunnel syndrome and shoulder injury," Plaintiff explains, "which 'heightened my depression, stress, and anxiety, leading to further discrimination and ultimately my wrongful termination.'" Opp. at 2 (quoting Compl. at 7).

24

"Disability discrimination claims under the [] NYSHRL may be brought under a theory of adverse employment action (*i.e.,* wrongful termination) or failure to provide reasonable accommodation (*i.e,* failure-to-accommodate)." *Guerrero v. Constellation Health Servs., LLC*, No. 22-CV-7736 (OEM), 2025 WL 2549936, at *5 (E.D.N.Y. Sept. 4, 2025). "Plaintiff brings claims under both theories." *Id.* Specifically, Plaintiff alleges that (1) Ryder failed to provide reasonable accommodations for her shoulder injury and carpal tunnel syndrome, and (2) Ryder retaliated against and wrongfully terminated her because of those same disabilities. *See* Opp.

### A. Failure to Accommodate

Courts evaluate failure-to-accommodate claims under the NYSHRL "using the familiar *McDonnell Douglas* burden-shifting framework." *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (citing *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021); *see Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (applying McDonnell Douglas to NYSHRL claims). Under this framework, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Bey*, 999 F.3d at 165.

"To make out a *prima facie* disability discrimination case based upon a failure to accommodate," a plaintiff must establish four elements: "(1) plaintiff is a person with a disability under the meaning of the [NYSHRL]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla*, 80 F.4th at 118–19 (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] . . . is governed by the same legal standards as govern federal ADA claims.").

Critically, then, in order to establish a failure-to-accommodate claim, a plaintiff "bears the burden of showing that 'the accommodation exists that permits her to perform the job's essential functions.'" *Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010 (NSR), 2019 WL 294309, at *6 (S.D.N.Y. Jan. 23, 2019) (quoting *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). "If the plaintiff satisfies this burden, the defendant has the burden of proving that the proposed accommodation is not reasonable." *Id.* The "EEOC has promulgated regulations that indicate the term [essential functions] 'encompasses the fundamental job duties of the employment position.'" *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 568–69 (S.D.N.Y. 2023) (cleaned up).

Here, there is little doubt that Plaintiff has satisfied through her allegations the first two elements of a failure-to-accommodate claim. First, she alleges that she suffered from a disability as defined by state law. Under the NYSHRL, a "disability" is a "physical . . . impairment . . . which prevents the exercise of a normal bodily function." *Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*, No. 23-CV-1379 (RA), 2024 WL 4008165, at *7 (S.D.N.Y. Aug. 30, 2024) (quoting N.Y. Exec. Law § 292(21)). Plaintiff's shoulder injury and carpal tunnel syndrome both qualify. Second, the parties do not dispute that Ryder is covered by the statute, or that the company had notice of at least Plaintiff's shoulder injuries.

The third and fourth elements, however, are less clear. As to the third element—that Plaintiff could have performed the essential functions of her job if afforded reasonable accommodations: Plaintiff's job required her to frequently lift, pull, and push objects weighing between ten and twenty-five pounds. Compl. at 46, 49. Yet for months after her shoulder surgery, doctors repeatedly reminded Ryer that Plaintiff was unable to complete any of these necessary tasks. *Id.* at 36–39. Towards the end of her recovery, Plaintiff told the company herself that she

26

could not lift, pull, or push any object greater than ten pounds. *Id.* at 32–34. And even once her shoulder began to "improv[e]," Plaintiff's carpal tunnel syndrome necessitated that she only "be assigned to light duty at work" with "[n]o pushing, pulling or lifting anything over 10 lbs." *Id.* at 42.

Relatedly, there are no allegations that Ryder "refused" to accommodate Plaintiff. *Tafolla*, 80 F.4th at 118. Plaintiff underwent shoulder surgery sometime in March 2023. Compl. at 7. According to Ryder, the company opened an "Accommodation case" for her the month before, on February 23, 2023. *Id.* at 64. Still, she received her last paycheck from Ryder on September 20, 2023—remaining on paid leave for the seven months in between. *Id.* at 11.

Given Plaintiff's pro se status, however, the Court must read Plaintiff's arguments to support the strongest claims they suggest. *Anderson Bey*, 2025 WL 564248, at *1. And in that light, the Court can make out a plausible argument to fulfill the fourth element of Plaintiff's failure-to-accommodate claim. It turns largely on how Ryder mishandled Plaintiff's termination itself. On September 7, 2023, for example, after Plaintiff had apparently already been terminated, Ryder's Workplace Accommodations Specialist Termall Ritter informed Plaintiff that "[a] separation has not been processed yet." Compl. at 58. Later that month, Ritter again informed Plaintiff that "management *could* process a separation." *Id.* at 67–68 (emphasis added). Indeed, Plaintiff only discovered that she had been fired when she was shut out of Ryder's internal job application portal—despite Ritter's previous reassurance that, even if she were terminated, Plaintiff would "still [be] able to look for positions within the company and apply." Compl. at 58. Based on these allegations, the Court can reasonably infer that Ryder refused, in some fashion, to accommodate Plaintiff's disabilities: she was slowly pushed out of the company without clear communication about what was needed to return to work.

Nevertheless, Plaintiff has not met her burden—even under the relaxed standards applied to pro se plaintiffs—to allege "that the accommodation exist[ed] that [would have] permit[ted] her to perform [her] job's essential functions." *Schneider*, 2019 WL 294309, at *6 (internal citation and quotation marks omitted). At no point does Plaintiff explain how she could have fulfilled "the fundamental job duties of the employment position" at issue if she had been given some kind of accommodation. *Crosby*, 695 F. Supp. 3d at 569 (internal citation and quotation marks omitted). She admits she could not push, pull, or lift any object weighing more than ten pounds—an essential element of her job. *See* Compl. at 32–34, 36–39, 42. Accordingly, because Plaintiff cannot satisfy through her allegations the third element of her failure-to-accommodate claim, that claim cannot survive Defendant's motion to dismiss. The Court, however, dismisses this claim without prejudice. The Court will permit Plaintiff to add allegations to satisfy this element in an amended complaint. *See infra* VIII.

### B. Wrongful Termination/Retaliation

"The burden-shifting framework under *McDonnell Douglas* also applies to retaliation claims under . . . the NYSHRL." *Tafolla*, 80 F.4th at 125 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). To establish a *prima facie* case of retaliation, a plaintiff must show (i) that she was "engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Id.* (internal citation and quotation marks omitted); *see Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000).

Unlike under the ADA, however, under the NYSHRL, "a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim." *Samuels*, 2024

WL 4008165, at *11 (S.D.N.Y. Aug. 30, 2024) (quoting *Limauro v. Consol. Edison Co. of N.Y., Inc.*, No. 20-CV-3558 (CM), 2021 WL 466952, at *10 (S.D.N.Y. Feb. 9, 2021)) (collecting cases). "Courts have distinguished between requests for accommodation in the first instance, which do not constitute protected activity, and complaints about or opposition to the denial of such requests, which may constitute protected activity." *Id.* (quoting *Piligian v. Ichan Sch. of Med. at Mount Sinai*, No. 17-CV-1975 (ALC) (SDA), 2020 WL 6561663, at *11 (S.D.N.Y. Apr. 7, 2020)) (cleaned up). But "a plaintiff who alleges that she was fired because she had merely requested an accommodation—without complaining about an otherwise unlawful activity that was already taking place—does not state a claim under the NYSHRL." *Id.* (quoting *Limauro*, 2021 WL 466952, at *10) (cleaned up).

Here, then, Plaintiff cannot make out a retaliation or wrongful termination claim under the NYSHRL. She claims she was retaliated against for her EEOC complaint and her accommodations requests. However, she has not established that she was engaged in any kind of protected activity before she was fired. Her accommodation requests alone do not suffice. And her EEOC complaint occurred long after her termination. *See* Compl. at 14. Moreover, as established above, Plaintiff has failed to demonstrate that some kind of accommodation would have allowed her to perform the essential functions of her job.

Absent either of these requirements, Plaintiff's wrongful termination and retaliation claim also fails. Because Plaintiff may have additional facts to support this claim, however, the Court dismisses it without prejudice and with leave to amend to address the issues addressed in this section. *See infra* VIII.

**VII.    Plaintiff Fails to Plausibly Allege That Her Union Breached Its Duty of Fair Representation**

Lastly, the Court evaluates Plaintiff's allegation that her union breached its duty of fair representation. *See* Opp. at 2.

"Under the NLRA, unions owe their members a duty of fair representation, which derives from the union's statutory role as exclusive bargaining agent." *Phillips*, 2025 WL 2659087, at *12 (internal citation and quotation marks omitted). "To successfully plead a breach of this duty, union member plaintiffs must plausibly allege two elements: (1) 'that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith' and (2) 'a causal connection between the union's wrongful conduct and their injuries.'" *Williams v. Metro-N. R.R.*, No. 17-CV-3092 et al. (KMK), 2020 WL 1489832, at *12 (S.D.N.Y. Mar. 27, 2020) (quoting *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)), *aff'd sub nom. Williams v. MTA Metro N. R.R.,* No. 20-3418-CV, 2022 WL 1053265 (2d Cir. Apr. 8, 2022).

Courts' "review of such allegations is 'highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" *Vaughn*, 604 F.3d at 709 (quoting *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 74 (1991)). "Thus, a union's actions will only be actionable if they are so far outside a wide range of reasonableness as to be irrational; tactical errors, even negligence are insufficient to establish such a breach." *Williams*, 2020 WL 1489832, at *12 (cleaned up).

Plaintiff only asserts, generally, that her "struggles were exacerbated by . . . the failure of the International Association of Machinists and Aerospace Workers (IAMAW) to provide adequate representation." Opp. at 2 (cleaned up). She provides no details to demonstrate how her union's actions or inactions were arbitrary, discriminatory, or made in bad faith, or that the union's wrongful conduct caused her injuries. *See Williams*, 2020 WL 1489832, at *12. Without

30

more, this claim also fails. Again, the Court dismisses this claim without prejudice and, as described below, with leave to replead in an amended complaint. *See infra* VIII.

### VIII.    Plaintiff Is Granted Leave to Replead

Although the majority of Plaintiff's claims do not survive Defendant's motion to dismiss, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead,' especially when a plaintiff is proceeding pro se." *Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 702 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *see also Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (summary order) ("District courts should generally not dismiss a pro se complaint without permitting at least one opportunity to amend."). Therefore, Plaintiff may replead her complaint if she so decides, "addressing the deficiencies noted above." *Ortiz*, 761 F. Supp. 3d at 702. Plaintiff may not, however, replead her claim under the ADA because doing so would be futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Because the Court is permitting Plaintiff to replead her claims should she so choose, her motions for leave to amend are denied as moot. *See* ECF Nos. 19, 20, 29.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's motion to remand is DENIED. Plaintiff's motions for leave to amend are also DENIED as moot. Plaintiff must file any amended complaint no later than May 22, 2026, consistent with this Order. If she fails to do so, the Court will dismiss her NYSHRL and NLRA claims with prejudice.

31

The Clerk of Court is respectfully directed to terminate ECF Nos. 3, 11, 19, 20, and 29.


Dated:  March 23, 2026
        New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

32